IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                    No. 1:95-cr-10004-JDB-1

FREDERICK L. JEFFERSON,

    Defendant.

_____

ORDER DENYING DEFENDANT'S MOTION FOR SENTENCE REDUCTION
_____

On July 30, 1992, then-twenty-year-old Frederick L. Jefferson, the Defendant in this matter, and two companions observed Elmus Gerald Sims, a jewelry sales representative for the Everwed Company, displaying samples in a Memphis, Tennessee, jewelry store and decided to rob him of the samples. (Presentence Report ("PSR") ¶ 3.) The three followed Sims in a rental car until he was just outside Milan, Tennessee, when Defendant directed the driver, Yolanda Marshall, to pull alongside Sims, at which point Jefferson displayed a handgun toward the salesman. (*Id.* ¶ 4.) Sims attempted to escape by making a U-turn on the highway, but Defendant told Marshall to run him off the road, threatening to kill her if she refused to comply. (*Id.*) After Sims' vehicle was forced from the roadway and down an embankment, coming to rest in a field, Jefferson approached and fired one round at close range through the driver's side window, striking the jewelry salesman, who fell face-forward into the floorboard. (*Id.* ¶ 5.) Defendant then stuck the gun inside the vehicle and shot Sims twice or thrice more in the back and buttock, killing him. (*Id.*) Jefferson removed the keys from the ignition, opened the trunk, and removed the small suitcase containing the jewelry samples, valued at approximately $70,000. (*Id.*) The three fled the

1

scene, abandoned the rental, and stole another vehicle in Humboldt, Tennessee.  (*Id.* ¶ 6.)  The rental car was ultimately traced to Marshall, who was then arrested.  (*Id.* ¶ 6.)  She identified the third conspirator as Brian Williams and both fingered Jefferson as the trigger man.  (*Id.* ¶ 4.)

Defendant was indicted by a grand jury and convicted of conspiracy to unlawfully interfere with interstate commerce by force and interfering with interstate commerce by force in violation of 18 U.S.C. § 1951, using a firearm during a crime of violence in contravention of 18 U.S.C. § 924(c), murdering a witness to prevent him from communicating with law enforcement in violation of 18 U.S.C. § 1512(a)(1)(C), and transportation of a stolen motor vehicle in interstate commerce in violation of 18 U.S.C. § 2312.  (Docket Entry ("D.E.") 100.)  At no point did Jefferson admit his guilt to any of the charges.  (PSR ¶ 11.)  He was sentenced in 1996 to life imprisonment, the statutory penalty under § 1512(a)(1)(C), plus sixty months by United States District Judge James D. Todd, to whom the case was then assigned. [1]  (D.E. 72, 100 at PageID 55.)

Subsequent to sentencing, Jefferson filed two appeals to the Sixth Circuit, a motion to set aside the judgment of his conviction, and a motion to dismiss the case for lack of jurisdiction, all of which were denied.  On December 20, 2023, this Court denied Defendant's petition under 28 U.S.C. § 2255 and denied a certificate of appealability.  (*See Jefferson v. United States*, Case No. 1:21-cv-01047-JDB-cgc (W.D. Tenn.).)  Currently before the Court is his pro se motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) (D.E. 110), to which the Government has responded, opposing the relief sought (D.E. 117), and Jefferson has replied (D.E. 120, 123, 124).

"Sentence modifications are the exception, not the rule . . . because a judgment of conviction that includes a sentence of imprisonment constitutes a final judgment and may not be

---

[1] The case was reassigned to the undersigned on October 18, 2021.  (D.E. 108.)

modified by a district court except in limited circumstances." *United States v. Hunter*, 12 F.4th 555, 561 (6th Cir. 2021) (quoting *Dillon v. United States*, 560 U.S. 817, 824 (2010)) (brackets and internal quotation marks omitted), *cert. denied*, 142 S. Ct. 2771 (2022).  One such circumstance resides in § 3582(c)(1)(A), commonly known as the compassionate release statute.  *See United States v. Pegram*, 843 F. App'x 762, 762 (6th Cir. 2021).

In order to grant compassionate release, the district court must (1) "find that extraordinary and compelling reasons warrant a sentence reduction," (2) "ensure that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," and (3) "consider all relevant sentencing factors listed in 18 U.S.C. § 3553(a)" to the extent that they are applicable.  *United States v. Elias*, 984 F.3d 516, 518 (6th Cir. 2021) (quoting *United States v. Jones*, 980 F.3d 1098, 1101 (6th Cir. 2020)) (cleaned up).  If one of the requirements is lacking, the court need not address the others.  *Id.* at 519.  Moreover, even if all three requirements are met, the court "need not" grant relief.  *Id.*  The heavy burden of securing early release under § 3582(c)(1)(A) is borne by the defendant.  *United States v. Gordon*, No. 23-3188, 2024 WL 1005772, at *2 (6th Cir. Mar. 4, 2024).

Jefferson proffers several reasons that he claims are "extraordinary and compelling." However, even assuming he has cleared this hurdle, the § 3553(a) factors weigh heavily against his release.  The factors include, among other things, the "nature and circumstances of the offense"; the "history and characteristics of the defendant"; and the "need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; . . . to afford adequate deterrence to criminal conduct; . . . [and] to protect the public from further crimes of the defendant."  18 U.S.C. § 3553(a).

The heinous and cold-blooded nature and circumstances of the offense of which Defendant was found guilty, as recounted above, are quite disturbing and weigh strongly against his release.

Moreover, his history and characteristics as described in the PSR and documentation provided by the Government display evidence of a lack of respect for societal and institutional rules and norms that started early in life and quickly escalated. According to the PSR, he was arrested at age eleven for throwing rocks at a car and shoplifting. (PSR ¶¶ 52-53.) His juvenile adjudications include grand larceny of an auto, attempted grand larceny (two), as well as violation of probation, at the age of thirteen (*id.* ¶¶ 36-38), after which he was deemed "uncontrollable" and committed to the Tennessee Department of Corrections at Wilder Youth Center ("Wilder") for an indefinite period (*id.* ¶ 38); grand larceny of an auto (three) and carrying a dangerous weapon at fourteen (*id.* ¶¶ 39-40); and receiving and concealing stolen property at fifteen (*id.* ¶ 42). He ran away from Wilder in October 1986. (*Id.* at 40.) As an adult, he was convicted of receiving and concealing stolen property over $200 (two) at sixteen (*id.* ¶¶ 44-45); theft of property over $500 at eighteen (*id.* ¶ 47); and theft of property over $500 at nineteen (*id.* ¶ 48). As noted above, Jefferson committed the instant offense at the age of twenty.

The movant admitted to federal probation officers that he was engaged in serious alcohol abuse from the age of fifteen until his arrest on the instant offense. (*Id.* ¶ 62.) He quit school after the eighth grade and, while in school, received failing grades and "was a truancy problem." (*Id.* ¶ 63.) Notwithstanding his decades of incarceration, the record contains no indication that he obtained, or attempted to obtain, his GED.

Defendant's prison infractions include discipline for possessing an unauthorized item in 1997, fighting in 1998 and 1999, assault without serious injury in 2000, threatening bodily harm in 2004, possessing a dangerous weapon in 2005, possessing a dangerous weapon and fighting in

2010, possessing a dangerous weapon (two) and fighting in 2017, and possessing a dangerous weapon (two) in 2018.[2]  (D.E. 117-4.)

In response to his disciplinary record, Jefferson argues that "while there are incident[s] of fights, there [is] absolutely nothing to demonstrate violence" and "once again, nothing violent." (D.E. 110 at PageID 90.)  Although the Court is encouraged by the dearth of infractions after 2018, it considers weapons possession, assaults, threats, and fighting to indeed be violent and finds Defendant's dismissiveness toward that behavior indicative of an unwillingness or inability to take responsibility for his actions.  The inmate also points out that he has made efforts at rehabilitation by completing various courses and being ordained as a minister, and that, at the age of fifty-two, he is unlikely to recidivate.

The Sixth Circuit has appeared to take a dim view of granting § 3582(c)(1)(A) relief to defendants convicted of § 1512 offenses and sentenced to life terms.  In *United States v. Little*, Case No. 21-2996, 2022 WL 1448529 (6th Cir. May 9, 2022), an unreported opinion, the defendant was convicted under § 1512 for conducting a "hit" on a cooperating federal witness in a drug trafficking case.  *Little*, 2022 WL 1448529, at *1.  The man was fatally stabbed thirty-five times in front of his two small children, leaving them covered in his blood.  *Id.*  In 1990, Little was convicted of murder and sentenced to life imprisonment.  *Id.*  Three decades later, roughly the same amount of time Jefferson has been incarcerated, Little sought compassionate release, which the district court denied.  *Id.*  The appellate court stated that the case "beg[a]n and end[ed]" with the § 3553(a) factors, finding no abuse of discretion in the district court's determinations that "Congress saw fit to mandate that those who commit premeditated murder serve the rest of their

---

[2]The Government is instructed to identify its exhibits using a descriptor in future filings in this Court.  Failure to do so may result in its filings being stricken from the docket.

days in prison" and that reducing the sentence would not "promote respect for the law, provide just punishment, afford adequate deterrence, or protect the public." *Id.* (internal quotation marks omitted).

Similarly, in *United States v. Cable*, No. 22-5176, 2023 WL 2401190 (6th Cir. Jan. 18, 2023), another unreported decision, the defendant pleaded guilty to a § 1512 offense after murdering a federal witness to prevent her testimony by shooting her twice and stabbing her nine times. *Cable*, 2023 WL 2401190, at **1-2. As in *Little*, the circuit court focused on the § 3553(a) factors, finding no abuse of discretion in the district court's conclusion that the need to provide just punishment and promote respect for the law factors were "particularly persuasive" in view of the offense and the mandatory minimum life sentence applicable to § 1512 offenses. *Id.* at *2. Nor did, in the appellate court's view, the "only" twenty-five-year period Cable had already served and the notion of reducing a mandatory minimum of life to some lesser sentence serve to provide just punishment, reflect the seriousness of Cable's offense, or protect the public. *Id.* His rehabilitation and low likelihood of recidivism could not outweigh the other factors. *Id.*

Having reviewed the parties' submissions, the record, and this circuit's caselaw, the Court concludes that Jefferson's early release would not promote respect for the law, provide just punishment, reflect the seriousness of the offense, afford adequate deterrence, or protect the public from further crimes of the Defendant, particularly in light of the nature and circumstances of the offense and his life sentence. Moreover, Jefferson's long history of criminal behavior stretching back to childhood does not give the Court confidence that he will not recidivate. He is, after all, still a relatively young man. His efforts at rehabilitation, while commendable, are simply not sufficient to outweigh the factors militating against release.

The motion is DENIED.  In addition to terminating D.E. 110, the Clerk is DIRECTED to terminate D.E. 124.

IT IS SO ORDERED this 1st day of November 2024.

s/ J. DANIEL BREEN<br>UNITED STATES DISTRICT JUDGE